# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| JAMES CHARLES TYSON, SR., | |
| Plaintiff, | No. C18-0039-LTS |
| vs. | **ORDER** |
| GARY KELLER and MATTHEW SPERFSLAGE, | |
| Defendants. | |

## I.  INTRODUCTION

This case is before me on defendants' motion (Doc. No. 19) for summary judgment. Plaintiff James Tyson has not filed a resistance and the time to do so has expired. Oral argument is not necessary. *See* N.D. Ia. L. R. 7(c).

## II.  PROCEDURAL HISTORY

Tyson has filed multiple pro se cases in Iowa's federal courts. On April 25, 2018, I entered an initial review order (Doc. No. 2) on three of Tyson's cases (C18-0013-LTS, C18-0039-LTS, C18-0045-LTS). In that order, I granted Tyson's application to proceed in forma pauperis, found that the complaint in C18-0013-LTS should be dismissed as frivolous and ordered that the remaining two cases be consolidated. Doc. No. 2 at 6-8. Regarding the consolidated complaint, I allowed Tyson's suit to proceed on a claim that his due process rights have been infringed related to his mental health treatment:

> In the supplemental complaint from C18-0045-LTS, Tyson states that the defendants gave "false statements" that caused him to be civilly committed as a mental health patient. Tyson also complains about increased medication as a result of this "commitment" and states that he has the right "to refuse chemical treatment." However, I note that Tyson is not civilly

> committed. He is an inmate serving a sentence for attempted murder at the Anamosa State Penitentiary. *See Tyson v. State*, 2017 WL 363224 (Iowa Ct. App. 2017); *James Charles Tyson, Sr.*, Iowa Department of Corrections, Offender Information, https://doc.iowa.gov/offender/view/1035241, last accessed on April 23, 2018.
>
> I assume Tyson is referring to a prison determination that he was in need of mental health treatment or transfer to a mental health unit. Regardless, he is correct that in some situations prisoners have the right to refuse treatment, and that they also have a due process interest in having forced mental health treatment comport with constitutional safeguards. *See Washington v. Harper*, 494 U.S. 210 (1990) (noting a liberty interest in avoiding unwanted medical treatment); *see also Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (analyzing a prisoner's claim that transfer to a mental health unit and forced medication violated his due process rights). At this early stage of the case, a plausible claim must be allowed to proceed. There is no indication in Tyson's complaint about what process was used regarding his alleged transfer and forced use of psychotropic medication, except his allegation that "false statements" were used against him. Accordingly, I will allow Tyson's claim that his due process rights have been infringed related to his mental heath treatment to proceed past initial review.

Doc. No. 2 at 7-8. I directed the Clerk of Court to file the pro se complaint from CR18-0045-LTS as a supplemental complaint in CR18-0039-LTS.[1]

On June 25, 2018, defendants filed an answer (Doc. No. 11) denying Tyson's claims and asserting various immunities. Defendants then filed their motion for summary judgment.

---

[1] Tyson filed a "pro se supplement" to his amended complaint on July 20, 2018. Doc. No. 14. The filing includes an Iowa Department of Corrections grievance related to the dismissed claims from the C18-0039-LTS, as well as a narrative regarding his claims that defendants made false statements which lead to him being involuntarily medicated.

## III. RELEVANT FACTS

The following facts are undisputed:[2]

Tyson is an inmate at the Anamosa State Penitentiary (ASP) in Anamosa, Iowa, serving a 40-year sentence for Attempted Murder, Assault on an Employee of a Correction Facility and Habitual Offender. Doc. No. 19-3 at 3. However, from March 6 to March 27, 2018, Tyson was transferred to the Iowa Medical and Classification Center (IMCC) in Coralville, Iowa. *Id.* at 4. Dr. Gary Keller is a psychiatrist at IMCC and Matthew Sperfslage is a social worker at IMCC. Doc. No. 19-2 at ¶ 3. Both defendants were involved with the court-ordered involuntary medication at the center of Tyson's complaint.

Tyson has a history of chronic mental health diagnoses dating back to the early 1990s. Doc. No. 21 at 3.[3] On March 6, 2018, Sperfslage filed an Application in the Johnson County District Court to have Tyson civilly committed under Iowa Code chapter 229. *Id.* at 6-7. A statement from Dr. Keller in support of the petition was attached in accordance with Iowa Code § 229.6(c)(1). *Id.* at 8-9; *see generally In re James Charles Tyson, Sr.*, No. 06521 MHMH015845 (Johnson Cnty., Iowa). Dr. Keller described the basis for civil commitment as follows:

> Mr. Tyson while at Anamosa has been followed regularly by our mental health staff. Over the course of time he has been noted to struggle with compliance, an issue noted during his prior incarceration culminating in 2008 with a commitment. He has struggled with receiving behavioral reports while in the system, most recently 8 major reports and 23 minor reports this past year. He is noted that at the timing of the reports he has often had stretches of non-compliance with medication. Most recently concerns about his overall well-being ar[ose] again this December. On

---

[2] Because Tyson did not respond to defendants' statement of undisputed material facts (Doc. No. 19-2), I will deem all such facts to be admitted. *See* N.D. Ia. L.R. 56(b).

[3] The defendants have provided Tyson's psychiatric medical records from March 6 through March 14, 2018. Doc. No. 21 at 37-54. These records indicate a diagnosis of Schizoaffective Disorder, Bipolar type. *Id.* at 38. Tyson frequently denies mental health issues throughout the treatment notes.

12/12/2017 as part of a minor report sanction, he was asked to write an essay and what he turned in was delusional loose thoughts about religion and sexual connotations. In turn, he became agitated when confronted about this on 12/13/2017 and ended up on mental health status after he became agitated, broke his desk, and threaten[ed] to kill people saying he was "Al-Qaeda." It was noted that 11 of the 13 days before that incident he had not been taking medications. Following that, he had a period of improved compliance and it appeared his symptoms did improve. With the end of December he complained again that the medications were making him sleepy, and had been skipping doses again of it, so in hopes of more consistent compliance his dose was lowered hoping that he would be consistent about taking it. He has been intermittent with compliance since then, noting 11 missed doses in January, 8 missed doses in February, and now already one dose in March.

Most recently, and what has prompted his transfer back to [IMCC] today, Mr. Tyson received a report for having 2 shanks found in his cell. It was noted in that same day he had been complaining about feeling like another offender had been in his cell and he was going to figure out who it was. In turn, he threatened to hurt the person when he found out. It was later that day they found 2 toothbrush handles with razors attached to them. He proceeded to become threatening and upset when he was placed in a security segregation status after this and threatened to fight everybody when handcuffs were removed. It was noted that he had refused 2 days of medication preceding the incident.

In talking with him today about his mental illness, he denied that he really has a mental illness, and believes he is normal. He reported that he has been taking medic actions since 1996 and he will only take the low dose of the medications, or he won't take it at all. He reports he "sleeps all the time" when on more medications. He agreed that he believes people were messing with his stuff in his cell, and denies anything about the shanks. I did attempt to explain my concerns reviewing his history with him and current events, and he cut me off again stating that he will only take this dose as he "knows his body" and this is what works for him.

In all, Mr. Tyson has a long history of mental illness, and a long history of aggression, assaults, and violent behavior. With this, he has a history of mental health and non-compliance with treatment of such. In the past he has been committed due to his non-compliance and dangerousness. When appropriately treated with consistent medications, he has been manageable. Unfortunately, he continues to lack insight in to his

medications and their effectiveness when taken regularly as demonstrated by his non-compliance followed by clear episodes of decompensation.

*Id.* at 8-9.

A hearing was held before a Judicial Hospitalization Referee on March 9, 2018. *Id.* at 10. Tyson was represented by counsel at the hearing but refused to attend. *Id.* at 11. The Referee found by clear and convincing evidence that Tyson was "seriously mentally impaired." *Id.* at 10. Specifically, she found that he was "unable to make reasonable decisions regarding his treatment" and that he "is a danger to himself and others in his current state" because of his mental illness. *Id.* Additionally, the Referee found that Tyson is "treatable with medications, if he is at a therapeutic dose." *Id.* The hearing officer ordered that Tyson be placed for a complete psychiatric evaluation and appropriate treatment under the supervision of Dr. Keller, and that Tyson comply with the prescribed course of treatment. *Id.* at 10-11. At that point, Tyson was started on involuntary psychiatric medication.

On March 19, 2018, Tyson appealed the Referee's order to the Iowa District Court for Johnson County. *Id.* at 18. In a March 20, 2018, status update, Dr. Keller noted that Tyson had been medicated and recommended that he continue inpatient level care at the IMCC. *Id.* at 19. Tyson returned to ASP on March 27, 2018.

On April 10, 2018, Dr. Keller filed a status update stating that Tyson continued to be "seriously mentally impaired and in need of treatment, but can continue in outpatient treatment." *Id.* at 21. Specifically, Dr. Keller wrote:

> Since the commitment [Tyson's] mood has shown improvement in stability, and he has now been able to maintain stability to move past and through his segregations and past his reports to return to a General population status on the programing unit at Anamosa. At this time I ask the court continue the civil commitment on Mr. Tyson as he is again making progress and showing signs of improvement and stability now that he has consistent medications at appropriate doses. Without this, he has continued to voice concerns about his dosages and his perceived side effects of the medications and would not be compliant with his current medications (lacks insight into symptoms of his illness and treatment needed). With his history

5

of threats, aggression, and assaults, his mental illness not treated is a danger to self or others.

*Id.* at 22.

The hearing on Tyson's appeal of the initial order was held on April 11, 2018. Tyson attended and testified, acknowledging his need for psychiatric medicine while stating that he did not believe he needed a court order to take the medication. *Id.* at 25. The District Court Judge credited this testimony but found by clear and convincing evidence that court-ordered involuntary medication was still necessary and appropriate under Iowa law:

> The Court believes that the Respondent's desire to take the medication is sincere at this point. However, the Court also believes that the Doctor is correct that without a Court order, the Respondent would convince himself that he no longer needs the medication and would become non-compliant. The Court bases this conclusion on the testimony of the Doctor and the Respondent's history of non-compliance with prescribed medications.

*Id.* at 25. Subsequent reports by Dr. Kerry to the Iowa District Court indicate that Tyson remains seriously impaired and in need of a court order to take his medication. *Id.* at 28-29 (May 11, 2018, Report); 30-31 (May 21, 2018, Order to continue treatment); 32-33 (August 15, 2018, Report); 35-36 (August 29, 2018, Order to continue treatment). Tyson did not appeal the district court's order.

Tyson believes that he does not need treatment and that he has the right to refuse chemical treatment. He states without evidence that he is allergic to the involuntary injections that he receives, that they cause heart problems and that he is taking a pill for his heart due to medication adjustments. Doc. No. 14 at 6. He states that Dr. Kerry and Sperfslage lied during the commitment hearing when they stated that he caused disturbances in the living unit, that he made two shanks out of toothbrushes and that he becomes violent or dangerous when not properly medicated. *Id.* at 5-6. Dr. Kerry has submitted an affidavit stating that Tyson's treatment, although involuntary, is proper and consistent with the standard of care in the medical community. Doc. No. 21 at 4.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or "when 'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine. Put another way, "'[e]vidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The parties "may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008).

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (quotations omitted). The party moving for entry of summary judgment bears "the initial responsibility of

informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. *Id.* If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

To determine whether a genuine issue of material fact exists, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citing *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick*, 90 F.3d at 1377.

As stated above, Tyson has not responded to the motion for summary judgment. Nor has he requested additional time for such a response. This court's rules provide that "[i]f no timely resistance to a motion is filed, the motion may be granted without notice." N.D. Ia. L.R. 7(f). However, in addressing an unresisted motion for summary judgment, I must consider whether the movants have met their burden of showing that summary judgment is appropriate. *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that the court must determine that the moving party is entitled to judgment as a matter of law even if the nonmoving party did not oppose the moving party's contentions); *Johnson v. Boyd–Richardson Co.*, 650 F.2d

147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"); Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion, … grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to relief … or … issue any other appropriate order"). Accordingly, I will consider the merits of the motion, even though it is unresisted.

## V. *DISCUSSION*

Defendants argue that they are entitled to judgment on Tyson's claims because there is no evidence that they were deliberately indifferent to a serious medical need, because Tyson has not exhausted his administrative remedies as required under the Prison Litigation Reform Act (PLRA), and because res judicata/claim preclusion applies as a result of the prior litigation of this issue during Tyson's civil commitment/involuntary medication hearings.

For the most part, these arguments miss the mark. Tyson does not allege that defendants were deliberately indifferent to a serious medical need. Instead, he claims that he was involuntarily medicated against his will, such that his Fourteenth Amendment right to bodily autonomy was violated. *See Harper*, 494 U.S. at 221-22 ("[R]espondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." (collecting cases)). Further, the issue is not whether defendant's ability to involuntarily medicate Tyson was previously adjudicated, but whether that adjudication violated his due process rights.

Nevertheless, I find that defendants are entitled to summary judgment on the merits of this claim. An inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

Amendment." *Harper*, 494 U.S. at 221-22. Tyson's "interest in avoiding the unwarranted administration of antipsychotic drugs is not insubstantial. The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 229. However, the State also has a legitimate and necessary interest in prison safety and security. *Id.* at 223. In balancing these interests, the Supreme Court has held that due process is satisfied when there is a determination that "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interests." *Id.* at 227. Procedural due process in this context is satisfied by procedures that include "(1) a hearing; (2) a neutral and detached trier of fact; (3) notice; (4) the inmate's right to be present at the adversarial hearing; (5) the inmate's right to cross-examine witnesses; and, (6) the right to appeal." *Green*, 691 F.3d at 924 (citing *Harper*, 494 U.S. at 228, 231-35).

Civil commitment in Iowa is governed by Iowa Code chapter 229. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). Iowa Code § 229.6 provides:

> 1. Proceedings for the involuntary hospitalization of an individual pursuant to this chapter . . . may be commenced by any interested person by filing a verified application with the clerk of the district court of the county where the respondent is presently located . . .
>
> 2. The application shall:
>
>    a. State the applicant's belief that the respondent is a person who presents a danger to self or others and lacks judgmental capacity due . . . [a] serious mental impairment as defined in section 229.1.
>
>    b. State facts in support of each belief described in paragraph "a."
>
>    c. Be accompanied by . . . [a] written statement of a licensed physician or mental health professional in support of the application.

As relevant to this case, Iowa law defines "serious mental impairment" as follows:

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness

10

lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

***

    d.    Has a history of lack of compliance with treatment and any of the following apply:

        (1)    Lack of compliance has been a significant factor in the need for emergency hospitalization.

        (2)    Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(20). These procedures are designed to protect the due process rights of the inmate, and "to protect [the inmate] and others from the danger [the inmate] poses as a result of his mental illness, which requires the administration of medication." *In re I.E.J.*, No. 12-2046, 2013 WL 3458175 at *3 (Iowa Ct. App. July 10, 2013).

Tyson does not assert that the provisions of Chapter 229 are constitutionally insufficient. In light of the requirements set forth in *Harper*, I find that the Iowa procedures satisfy due process. *See Chapman v. Craig*, 580 Fed. Appx. 501 (8th Cir. 2014) ("The record shows that the [Iowa] state-court proceeding, which occurred before Chapman was involuntarily treated with antipsychotic medication, satisfied the requirements of due process."). I further find that due process was satisfied in Tyson's particular case. There is nothing in the record to suggest that the defendants failed to follow the procedure set out in Chapter 229. After the initial hearing, the Referee found that Tyson was seriously mentally impaired and ordered appropriate treatment.

Tyson appealed and a trial de novo was held before an Iowa District Court Judge. The judge agreed that Tyson was seriously mentally impaired and that it was in his best interest to continue treatment. Tyson was represented by counsel throughout these proceedings and did not appeal the ruling. Although Tyson alleges that defendants lied in their reports against him, he has not presented evidence supporting this allegation.

Tyson has failed to prove that his due process rights were violated.[4] Defendants are entitled to summary judgment.

## VI. CONCLUSION

For the foregoing reasons:

Defendants' motion (Doc. No. 19) for summary judgment is **granted in its entirety.** Because this order disposes of all pending claims:

1. Judgment **shall enter** in favor of the defendants and against the plaintiff.
2. The Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 11th day of December, 2018.

_____
Leonard T. Strand, Chief Judge

---

[4] This case appears to be little more than an appeal from the Iowa District Court's final ruling. This is not the appropriate forum for such an appeal. *Dodson v. Univ. of Ark.*, 601 F.3d 750, 754 (8th Cir. 2010) (under the *Rooker-Feldman* doctrine, "only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment.").